(No. 23500.—

BAKER & CONRAD, INC., Appellant, *vs.* THE CHICAGO HEIGHTS CONSTRUCTION COMPANY, Appellee.

*Opinion filed October 14, 1936—Rehearing denied Dec. 2, 1936.*

McKenna, Harris & Schneider, (Abraham W. Brussell, of counsel,) for appellant.

Kirkland, Fleming, Green, Martin & Ellis, (David Jacker, John M. O'Connor, Jr., and William H. Symmes, of counsel,) for appellee.

Mr. Chief Justice Herrick delivered the opinion of the court:

The Chicago Heights Construction Company, (hereinafter called construction company,) on or about January 1, 1929, by contract with Montgomery Ward & Co., undertook to remodel and reconstruct a certain building in Chicago Heights, Illinois. Prior to March 12, 1929, Baker & Conrad, Incorporated, (hereinafter called Baker & Conrad,) made a contract with the construction company to do certain of the excavating work undertaken by it on the premises under its contract with Montgomery Ward & Co. Subsequent to the making of the contract between the construction company and Baker & Conrad, John Cordes made a contract with Baker & Conrad to move the excavated material from the premises. Luther Storey was employed by Cordes to supervise a certain portion of such work. On March 12, 1929, while working on the premises, Storey received injuries arising out of and in the course of his employment which caused his death. He left a widow as his sole dependent. The construction company, Baker & Conrad and Cordes severally came automatically under the provisions of the Workmen's Compensation act, each being engaged in a business at the time of the injury and death of Storey declared to be extra-hazardous under the provisions of sub-sections 1 and 2 of section 3 thereof. (State Bar Stat. 1935, chap. 48, p. 1590.) Cordes did not carry insurance. The widow of Storey filed a claim with the Industrial Commission against Baker & Conrad for compensation under the provisions of section 31 of the Workmen's Compensation act. (Cahill's Stat. 1933, p. 1393; Smith-Hurd Stat. 1933, p. 1437.) She was allowed an award. The New Amsterdam Casualty Company, (hereinafter called the casualty company,) was the insurance carrier of Baker & Conrad and paid so much of the award as had accrued at the time of the commencement of this suit. On May 22, 1930, an action in trespass on the case was brought

in the superior court of Cook county in the name of Baker & Conrad, for the use of the casualty company, against the defendant construction company to recover as damages the compensation paid by the casualty company because of the award made by the Industrial Commission against Baker & Conrad.

The declaration is quite voluminous, consisting of three counts. These counts charged in apt language the foregoing facts which preceded the commencement of the suit; also averred the portion of the award theretofore paid by the casualty company, its liability to pay the remainder not yet accrued, and that Baker & Conrad, as the sub-contractors, were liable under the provisions of section 31 of the Compensation act. The declaration further charged the death of Storey was not caused by the negligence of Cordes nor any of his employees, but averred certain acts of negligence on the part of the construction company and its employees in that behalf by which Storey sustained the injuries which occasioned his death. It alleged that by the provisions of section 29, (Cahill's Stat. 1933, chap. 48, pp. 1392, 1393; Smith-Hurd Stat. 1933, p. 1436;) and from the facts charged by the declaration, there was a liability for damages against the person causing the injury, and Baker & Conrad was subrogated to the right of the personal representative of Storey to recover against the construction company, it being the person whose negligence brought about the injury which resulted in Storey's death. It was further alleged that under the provisions of the policy of insurance issued by the casualty company to Baker & Conrad, and under the provisions of section 29, the casualty company became the subrogee of the right of action which Baker & Conrad had by virtue of section 29. The provisions of section 18 of the Practice act were invoked and compliance therewith alleged.

The defendant filed a plea of not guilty. After the trial had commenced, by leave of the court the plea was with-

drawn and the defendant demurred *ore tenus*. The demurrer was sustained. Plaintiff abided its declaration. Judgment in bar and for costs followed. That judgment was affirmed by the Appellate Court. (*Baker & Conrad, Inc.* v. *Chicago Heights Construction Co.* 282 Ill. App. 459.) The cause comes here on leave to appeal granted by this court.

The plaintiff claims the declaration states a cause of action under two theories: (1) Under the provisions of sections 29 and 31 of the Compensation act by virtue of the facts charged by the declaration and admitted by the demurrer; and (2) independent of the provisions of the compensation statute, that under the law of this State as it existed on March 12, 1929, an insurer which has paid its insured for loss suffered by the insured occasioned by the negligence of a third party is subrogated to the rights of its insured against the negligent third party. In the view we take of the cause it will be necessary to dispose only of the first proposition advanced by the plaintiff.

In considering the proceeding we hold that the demurrer *ore tenus* amounted to a general demurrer, only. A general demurrer challenges only matters of substance. It does not reach matters of form. (*Massachusetts Mutual Life Ins. Co.* v. *Kellogg,* 82 Ill. 614.) Matters of form may be questioned only by special demurrer specifically designating the defects. *People* v. *Holden,* 91 Ill. 446.

The decision of the case requires a construction of sections 29 and 31 of the Compensation act in order to arrive at the legislative intent. Those sections are:

"Sec. 29. Where an injury or death for which compensation is payable by the employer under this act, was not proximately caused by the negligence of the employer or his employees, and was caused under circumstances creating a legal liability for damages in some person other than the employer to pay damages, such other person having also elected to be bound by his act, or being bound thereby un-

der section three (3) of this act, then the right of the employee or personal representative to recover against such other person shall be subrogated to his employer and such employer may bring legal proceedings against such other person to recover the damages sustained in an amount not exceeding the aggregate amount of compensation payable under this act, by reason of the injury or death of such employee. Where the injury or death for which compensation is payable under this act, was not proximately caused by the negligence of the employer or his employees and was caused under circumstances creating a legal liability for damages on the part of some person other than the employer to pay damages, such other person having elected not to be bound by this act, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this act, but in such case if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or his personal representative: *Provided,* that if the injured employee or his personal representative shall agree to receive compensation from the employer or to institute proceedings to recover the same or accept from the employer any payment on account of such compensation, such employer shall be subrogated to all the rights of such employee or personal representative and may maintain, or in case an action has already been instituted, may continue an action either in the name of the employee or personal representative or in his own name against such other person for the recovery of damages to which but for this section the said employee or personal representative would be entitled, but such employer

shall nevertheless pay over to the injured employee or personal representative, all sums collected from such other person by judgment or otherwise in excess of the amount of such compensation paid or to be paid under this act, and all costs, attorneys' fees and reasonable expenses incurred by such employer in making such collection and enforcing such liability."

"Sec. 31. Anyone engaging in any business or enterprise referred to in sub-sections 1 and 2 of section 3 of this act who undertakes to do any work enumerated therein, shall be liable to pay compensation to his own immediate employees in accordance with the provisions of this act, and in addition thereto if he directly or indirectly engages any contractor whether principal or sub-contractor to do any such work, he shall be liable to pay compensation to the employees of any such contractor or sub-contractor unless such contractor or sub-contractor shall have insured, in any company or association authorized under the laws of this State to insure the liability to pay compensation under this act, or guaranteed his liability to pay such compensation.

"In the event any such person shall pay compensation under this section he may recover the amount thereof from the contractor or sub-contractor, if any, and in the event the contractor shall pay compensation under this section he may recover the amount thereof from the sub-contractor, if any.

"This section shall not apply in any case where the accident occurs elsewhere than on, in or about the immediate premises on which the principal has contracted that the work shall be done."

In the interpretation of statutes several cardinal rules of construction may be applied as guides to the correct conclusion. The necessity and reason for the statute are to be considered. The meaning of the words employed may be regarded in a technical and limited sense or be given a broader and more comprehensive meaning in order to de-

termine the legislative purpose. (*Cruse* v. *Aden,* 127 Ill. 231.) The intent may be gathered from a consideration of the whole act, and if there is some want of harmony between the whole act and the language of some particular clause, sentence or phrase, such inconsistent words may be modified, changed or rejected in order to arrive at a construction conforming to the legislative aim. (*Ketcham* v. *Board of Education,* 324 Ill. 314.) Where, in arriving at the legislative intent in the construction of a statute, the meaning of a word becomes a controversial subject, its primary meaning is not necessarily important. The sense in which the legislature applied the word or words is controlling, even though such meaning is not the ordinary or commonly accepted significance of the word. (*Jennings* v. *Calumet Nat. Bank,* 348 Ill. 108; *Burns* v. *Industrial Com.* 356 id. 602; *Newman Co.* v. *Industrial Com.* 353 id. 190; *Raymond* v. *Industrial Com.* 354 id. 586.) Current circumstances and conditions, the evils endeavored to be cured, the objectives sought, the betterment or improvement of existing remedies, may be considered by this court in seeking the legislative intent. (*Hoyne* v. *Danisch,* 264 Ill. 467; *Burns* v. *Industrial Com. supra; Faber* v. *Industrial Com.* 352 Ill. 115.) Plainly, the primary objective of the Workmen's Compensation act was to furnish a measure of financial protection to the workman and his dependents for injuries received by him which arose out of and in the course of his employment and to fasten the liability either upon his direct or indirect employer. The secondary design was to afford a remedy to an employer who has paid compensation for an injury to an employee in those cases where the injury has been caused by the negligence of some other employer in the series of employers or the negligence of a third person not within the Workmen's Compensation act. In cases of that type, as to the employer paying the award it was intended to subrogate him to the rights of the workman to recover against the negligent employer or

third person not within the Compensation act. To effectuate this end the act is to be given a liberal rather than a narrow construction. Neither the term "employer," "contractor" nor "sub-contractor" is to be given the restricted sense in which those terms are used in the so-called Mechanics' Lien act. The Mechanics' Lien act confers valuable rights and privileges on those falling within that class which are not enjoyed by the public generally, hence a strict meaning of the terms "sub-contractor" and "contractor" is applied to those who seek shelter under the terms of that statute.

With these rules before us we approach the construction of sections 29 and 31. We will consider them in inverse order.

Section 31 imposes liability on an employer for injury to any of his immediate employees or on anyone engaged in any business or enterprise referred to in sub-sections 1 and 2 of section 3 undertaking to do any work enumerated therein. Section 31 then proceeds to make any general contractor, if he directly or indirectly engages any contractor, whether principal or sub-contractor, to do any such work, liable to pay compensation to the employees of any such contractor or sub-contractor unless such contractor or sub-contractor shall be insured in some company or association authorized under the laws of this State to insure the liability to pay the compensation under the act or some such company has guaranteed his liability to pay such compensation. The next paragraph of section 31 provides, in the event any such person shall pay compensation under the provisions of the section, he may recover the amount paid from the contractor or sub-contractor, if any, and in the event the contractor shall pay compensation, he may recover the amount from the sub-contractor, if any.

The word "indirectly," used in the section, cannot be ignored. It obviously was used advisedly from the fact that it occurs in the phrase "directly or indirectly." The Gen-

eral Assembly evidently intended to confer broader rights on the employee by not restricting his remedy for compensation against one who directly engages any contractor or sub-contractor. In furtherance of this motive the right to recover compensation on the part of the employee and his dependents was not limited to recovery against his immediate employer standing in contractual relationship to him, but the section was amplified for the purpose of authorizing recovery of compensation against any and all of those connected with the work as contractors or employers, even though there was no direct, proximate relation of employee and employer. The remote employer or contractor was brought within those liable for compensation even though the relationship of employee to him, as such, was indirect and not within the usual meaning of the terms "employer" and "employee." The term "employee" clearly was used with the thought that he was any workman rendering a service on the subject matter of the contract, regardless of by whom he may have been immediately employed or who had the direct right to discharge him.

As tending to show the term "contractor," used in the act, was intended to differentiate the meaning of that word as generally used, we encounter the term "principal," referring to contractor, in the first paragraph of the section, while the section begins with the words, "Anyone engaging in any business or enterprise," etc., meaning those engaged in the extra-hazardous businesses defined in sub-sections 1 and 2 of section 3. The liability to pay is laid upon any person who "directly or indirectly" engages "any contractor" who has failed to provide compensation insurance for his own immediate workmen. The term "sub-contractor" is not spoken in a technical sense, but includes not only those contracting directly with the original contractor but also those who have contracted with one whose contract is subordinate to a previous agreement, regardless of whether it is the original or general contract. Such persons are all "sub-

contractors," although they may be removed in different degrees from the original contractor. No distinctions are recognized in the applicability of the act as to "contractors or to sub-contractors," as those terms are customarily recognized, or even those still further removed in the chain of contracts descending from the original contract. The act was intended to embrace all laborers rendering services in the advancement of their employer's business, without this: that the workman must have been employed by someone so standing in relation to the subject of the contract that he had the authority to engage in the business assumed by the employer. *Qualp* v. *Stewart Co.* 266 Pa. 502, 109 Atl. 780; *Passarelli* v. *Baker & Yettman Co.* 241 N. Y. (App. Div.) 639.

Passing to section 29, it was obviously the intention of this section that in those cases where the compensation for injuries had been paid by some employer, regardless of whether he stood in proximate contractual relationship to the injured employee but was a contractor or sub-contractor as hereinabove defined, and the injury or death was caused by the negligence of some third person either within or without the act and not by the negligence of such employer, such "employer shall be subrogated to the rights of the employee or his legal representative." The employer here contemplated may be the immediate employer or one of a succession of employers engaged in the original undertaking, or some part thereof, who has paid the compensation for the injuries to or death of the workman. For the purpose of the act, if not the immediate employer he may be called a "statutory employer." If he had paid the compensation for injuries to or death of some laborer on the work under the provisions of the act, where the injuries or death had not been caused by the negligence of the immediate employer but by some third party, the "statutory employer" may be subrogated to the rights of the workman against some third person who did cause the injury. This inter-

pretation is further supported by the fact that section 31 refers to two classes of employees, viz., "immediate employees" and "employees of contractors and sub-contractors." If there are employees of a person other than his immediate employees, it must follow that there is an "employer" who is not an "immediate employer," viz., a contractual one, not supervising or coming in actual contact with the employee and with no primary authority to order his labor nor power to discharge, and not immediately liable for his wages but nevertheless an employer for the purpose of this section of the law. It is immaterial for the aim of the statute whether he be considered an "indirect employer" or a "statutory employer." The term "statutory employer" has been recognized in a compensation case by the Supreme Court of Maryland. (*State* v. *Bennet 'Building Co.* 140 Atl. 52.) Connecticut and Pennsylvania also concede the expanding of the term "employer" to include one who is not the "immediate employer." *Pascoal* v. *Mortenson,* 109 Conn. 39, 145 Atl. 149; *Palumbo* v. *Fuller Co.* 99 id. 353, 122 Atl. 63; *Qualp* v. *Stewart Co. supra; Gallivan* v. *Wark Co.* 288 Pa. 443, 136 Atl. 223.

The legislature contemplated that sections 29 and 31 were to be construed together where necessary to accomplish the legislative intent. Section 29 undertook to give a rather sweeping meaning to the term "employer" which would be in harmony with the sense in which the word "employer" was used in section 31. It was not the thought of the General Assembly to impose a liability upon an employer for compensation under section 31 regardless of the degree he occupied in the subdivision of contracts under which the work was undertaken, nor how far removed from being the person who in fact employed the laborer, without affording such employer an opportunity for reimbursement and subrogation in those instances where the compensation paid by him arose out of injuries to or death of the workman caused by the negligence of some other con-

tractor or a third person. The construction urged by the defendant would result in a situation where, if the employer of the immediate employee carried no insurance but an indirect employer did and paid compensation under the order of the Industrial Commission, the indirect or statutory employer would have no remedy against the third person whose negligence caused the injury. That injustice was not within the legislative view, nor is it a reasonable construction. Section 29 considered that the, act created an indirect or statutory employer in addition to the immediate employer. The insurance carrier of the employer paying the award is subrogated to the legal rights of the employer. An assignment of a cause of action for wrongful death is recognized by section 29 of the Compensation act and is not against the public policy of this State. *Lincoln Park Coal Co.* v. *Wabash Railway Co.* 338 Ill. 82.

We are not impressed with the claim that the plaintiff must proceed against Cordes, the direct employer of the deceased. The second paragraph of section 31 provides, in substance, that any contractor who has paid compensation to an employee *may* recover such amount from the contractor or sub-contractor. This clause does not limit the remedy to one against the immediate employer or sub-contractor.

The defendant urges that under the statutory-employer doctrine it could also be a statutory employer of the deceased. This does not necessarily follow. By section 31 the principal contractor is not liable to pay compensation to the injured employee of the sub-contractor unless the sub-contractor has failed to take out insurance to· protect the employee.

We regard it as immaterial in the present state of the record whether the suit was brought in the name of Baker & Conrad for the use of the casualty company or in the name of the legal representative of the deceased for the use of the casualty company. That point could not be reached

by general demurrer. The casualty company was the real or usee plaintiff. It might well have prosecuted the suit in its own name. The cause of action remains the same whether the nominal plaintiff is Baker & Conrad or Storey's legal representative. *Metropolitan Life Ins. Co.* v. *People,* 209 Ill. 42; *Beresh* v. *Knights of Honor,* 255 id. 122.

The trial court was in error in sustaining the demurrer to the declaration.

The judgments of the Appellate Court for the First District and the superior court of Cook county are severally reversed and the cause is remanded to the superior court, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*